**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA**

**ALLAN A. PETERSEN,**

      **Plaintiff,**

**v.**                                                      **Civil Action No. 3:06cv72**
                                                         **(Judge Broadwater)**

**DOMINIC A. GUTIERREZ, SR.,
S. MCCLINTOCK, OFFICER SANDERS,
OFFICER R. TRYBUS,[1] CAPTAIN ELZA,
OFFICER JUNKINS, WILLIAM LAYHUE,**

      **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

On July 17, 2006, the *pro se* plaintiff initiated this case by filing a civil rights complaint pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). On August 2, 2006, Plaintiff filed a Motion and Brief for a Temporary Restraining Order and/or a Preliminary Injunction Against the Defendants. Plaintiff was granted permission to proceed as a pauper on August 16, 2006. On September 5, 2006, Plaintiff filed an Addendum to his motion for injunctive relief and on October 24, 2006, Plaintiff was granted permission to amend his complaint. Plaintiffs' Amended Complaint was filed on November 3, 2006. This case is before the undersigned for an initial review and report and recommendation pursuant LR PL P 83.02, and 28 U.S.C. §§ 1915(e) and 1915A.

**I. The Complaint**

---

[1] When Plaintiff initiated this case, he identified this defendant as Officer Tribliss. When Plaintiff later sought permission to amend his complaint, he stated that the Officer's name was actually R. Trybis and asked the Court to correct the spelling of the Defendant's name. The Court did so on October 24, 2006. However, in documents filed subsequently, it has come to the Court's attention that the Defendant's name is in fact, R. Trybus. Therefore, the undersigned has corrected the Defendant's name accordingly.

According to the complaint, on May 31, 2006, at 9:30 a.m., Plaintiff delivered seven affidavits to Defendant Trybus ("Trybus") by placing them in the defendant's mailbox in the Lieutenant's office at FCI Morgantown. The affidavits were made and signed by Plaintiff and six other inmates in support of an administrative claim Plaintiff made against staff in the Receiving and Discharge ("R&D") Department. It appears that when Plaintiff transferred into FCI Morgantown from another federal institution, he brought with him a pair of boots and beard trimmers. Although Plaintiff was able to have these items in his property at other federal institutions, they were apparently considered contraband at FCI Morgantown and confiscated. Plaintiff appears to have also received an incident report and time in segregation for possessing the items. Plaintiff filed a claim against staff for misconduct. The affidavits that Plaintiff submitted to Trybus allegedly supported Plaintiff's claim that other inmates had brought similar items into the institution, but were not disciplined for doing so. The affidavits allegedly show that the other inmates merely had the items confiscated, were allowed to ship the items home, or in some instances, were even allowed to keep the items.

At 11:10 a.m. that morning, Plaintiff was called over the intercom to report to the Captain's office. When he arrived there, the Captain's door was closed so he proceeded to the Lieutenant's office. There he found Trybus and Captain Elza ("Elza") talking to an investigator about the affidavits Plaintiff had left earlier. A couple of minutes later, Plaintiff was told to go to the Captain's office where Trybus and Elza now were. At the time, Plaintiff was carrying a large legal folder with him that contained all of his legal materials. After Plaintiff walked into Elza's Office, Trybus closed and locked the door. At this point, Elza began yelling at Plaintiff about the complaint he filed and the affidavits. Elza allegedly told Plaintiff that he wanted to "lock him up," but that other staff members had talked him out of it. Elza also told Plaintiff that he was not authorized to

do an investigation of staff and that the affidavits he obtained from other inmates to support his claim were inappropriate. Elza then threatened to send Plaintiff to another institution. Plaintiff was told that if he mentioned his complaint again, tells anyone what was said in that room, tries to obtain more affidavits, or continues to investigate staff, he would be locked up for a long time.

After threatening Plaintiff with lock-up, Elza then questioned Plaintiff about his legal file. Elza informed Plaintiff that he had been advised by staff that Plaintiff is always carrying around his legal folder and that he cannot possibly be working at his prison job if he is always working on his legal cases. Elza then informed Plaintiff that he is being assigned a new job as of that day. Plaintiff was informed that his new job would be scrubbing sidewalks with a bucket and scrub brush in the middle of the compound from 7:30 a.m. to 3:30 p.m. Plaintiff was informed that if he leaves his assigned area during this time period, Elza would personally write him an incident report and place him in segregation. Plaintiff was further advised that his new job assignment came straight from the Warden.

At this point, Trybus took Plaintiff's legal folder from his possession and began going through it. Trybus looked through the folder and told Elza that the folder contained more affidavits. Trybus gave those affidavits and other documents to the Captain. Elza told Trybus to take the documents out of the folder and not return them to Plaintiff. Plaintiff objected, but was told that he would not be getting the documents back and that he would not receive a confiscation form for the taking of the documents. Plaintiff made several other objections to no avail. Finally, he was told to leave, and was directed to report for his new work assignment at 12:30 p.m. Plaintiff thereafter returned to his unit without all of his legal materials.

At 12:30 p.m., Plaintiff reported to the compound officer, Defendant Junkins ("Junkins"). Upon doing so, Plaintiff was told that he had a new job scrubbing sidewalks in the middle of the

compound. Plaintiff was further told to be working all the time so that the Warden could see him whenever he looked out his window. Plaintiff was also told that he would be watched by the Assistant Warden and the Captain too.

Over the course of the next several weeks, Plaintiff was constantly watched and was reprimanded whenever he was not scrubbing sidewalks. Moreover, staff gathered around Plaintiff at times to laugh at him while he was working. Whenever Plaintiff attempted to take a break, talk to another inmate, or do another job, he was called over the intercom to report to the compound officer, usually either Junkins or Defendant Sanders ("Sanders"). Plaintiff asserts that he suffers from asthma and that he attempted to take breaks several times during the heat of the day when he was suffering from shortness of breath. Each time, Plaintiff was told to get back to work or he would be sent to segregation. Plaintiff also alleges that he was paid only $5.25 monthly, while other inmates doing the same job were paid $16.80 monthly.

In addition, Plaintiff states that one day when he attempted to take his regularly scheduled lunch break between 10:30 and 12:30, he was repeatedly called over the intercom. Because he was on break, Plaintiff admits that he ignored the calls. When he was eventually tracked down, Plaintiff was in his unit resting. He was told to report immediately to Sanders. When Plaintiff reported, Sanders told him that the Warden wants to see him working during the noon meal. Therefore, Plaintiff was being switched to the early meal (short-line) which begins at 9:45 a.m. Plaintiff was advised that after his meal he is to immediately report back to work in the middle of the compound where he is to stay until 3:30 p.m. Plaintiff objected because other inmates who work during noon meal are done with their work day at 12:30 p.m. However, Plaintiff was told that the same was not the case for him and that he would continue to work until 3:30 p.m.

Plaintiff alleges that shortly thereafter, he began filing administrative remedies regarding his

4

treatment. Plaintiff asserts that he filed a "sensitive BP-9" with the regional office alleging that staff was violating his rights. However, Plaintiff's grievance was rejected because that the regional office found that the issues raised were not sensitive. Moreover, Plaintiff was advised to follow the appropriate procedures and file his complaint at the institutional level.

Based on these facts, Plaintiff makes four claims. First, Plaintiff claims that he was retaliated against for filing an administrative complaint against R&D staff. Second, Plaintiff asserts that he was denied equal protection of the laws. Third, Plaintiff asserts that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment. Fourth, Plaintiff asserts that the Defendants violated his Sixth Amendment right to access to the courts.

## II. Plaintiff's Amended Claims

On October 23, 2006, Plaintiff was granted permission to amend his claims. Pertinent to this review is the addition of William Layhue ("Layhue") as a defendant, and the addition of a claim that Plaintiff's legal materials were again confiscated on July 13, 2006.

According to the amended complaint, on July 13, 2006, Trybus and Elza discovered another inmate copying Plaintiff's administrative appeal documents for him. Those documents were confiscated and have not been returned. Moreover, Plaintiff asserts that since the original complaint was filed, Layhue has been intentionally withholding Plaintiff's administrative appeal documents to punish him. Plaintiff also outlines other incidents where he has been told by Junkins that he must be working at all times and that he must be scrubbing sidewalks in the middle of the compound. Plaintiff asserts that the other inmates on the same work detail are not treated this way and that there is no rational basis for the disparate treatment. Plaintiff asserts that such treatment is in retaliation for filing administrative grievances against staff.

## III. Plaintiff's Motion for Injunctive Relief

In this motion, Plaintiff requests that the Court grant him a temporary restraining order or preliminary injunction directing the Defendants to stop imposing incident reports on him, having negative interaction with him, and to stop placing sanctions on him in a retaliative and discriminatory manner. Additionally, Plaintiff requests that the Court direct Trybus, Elza, and Layhue, to return his personal legal materials confiscated on May 31 and July 13, 2006.

In support of his motion, Plaintiff states that the Defendants have retaliated, abused, mistreated, harassed and threatened him. Moreover, the Defendants retention of his legal materials is delaying and preventing Plaintiff from filing an administrative appeal regarding his claim of discrimination and from filing a Petition for Writ of Certiorari with the Supreme Court.

Specifically, Plaintiff asserts that on July 27, 2006, Defendant Sanders ("Sanders") wrote Plaintiff an incident report for not eating at his assigned meal time. Plaintiff concedes that he was eating at 11:00 a.m. rather than his assigned time of 9:45 a.m. However, Plaintiff asserts that this was not the first time he had done so and no other compound officer had written him an incident report. Further, Plaintiff states that he continues to eat at 11:00 a.m. and has not received any other incident reports. Moreover, none of the other inmates that worked with Plaintiff and ate at the same time received an incident report. Plaintiff asserts that Elza has even instituted a new work schedule to cover up the action of Sanders.

Furthermore, Plaintiff asserts that simply by virtue of being incarcerated at the institution where the Defendants work, he is put at risk daily of receiving unwarranted incident reports, sanctions and general retaliation. Plaintiff argues that the only way to ensure that he does not receive such treatment is through an injunction. Plaintiff asserts that the loss of his constitutional rights as alleged in the complaint is enough to show irreparable injury and that the Defendants have no legitimate interest in violating his constitutional rights. Alternately, Plaintiff asserts that the

Court has the authority to issue an injunction directing that the BOP to transfer him to another institution.

On September 5, 2006, Plaintiff filed an Addendum to his motion for injunctive relief. In the addendum, Plaintiff asserts that since the filing of his motion for injunctive relief, there have been additional violations of constitutional rights by the defendants. Specifically, Plaintiff asserts that he has been denied total access to the courts because the Defendants removed all of his legal property from his assigned locker and his Petition for Writ of Certiorari to the United States Supreme Court is missing. Thus, the Defendants have prevented Plaintiff from missing an imminent deadline with that court.

## **IV. Standard of Review**

Because Plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Complaints which are frivolous or malicious, must be dismissed. 28 U.S.C. 1915(e).

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint filed *in forma pauperis* which fails to state a claim is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should

only be ordered when the legal theories are "indisputably meritless,"[2] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992).

**V. Analysis**

**A. Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes"[3] and is required even when the relief sought is not available. Booth, 532 U.S. at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter at 524 (citing Booth, 532 U.S. at 741) (emphasis added). In addition, the Supreme Court has stated that "we will not read futility or other exceptions into statutory exhaustion requirements . . ." See Booth at 741, n. 6.

The BOP makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of

---

[2] Id. at 327.

[3] Porter at 524.

confinement is located. (For inmates confined at FCI-Morgantown, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

In this case, Plaintiff filed an administrative remedy with regard to his claim that he was discriminated against by R&D staff. See Complaint (dckt. 1) at Ex. A and Ex. B. However, Plaintiff has yet to complete the Regional Level with regard to that remedy. See Motion for Injunctive Relief (dckt. 13) at 2. Further, Plaintiff has filed a "sensitive BP-9" with the regional office regarding his equal protection and cruel and unusual punishment claims. However, those claims were rejected for not containing a sensitive matter and Plaintiff was advised to follow the proper channels for submitting his claim. See Complaint at Ex. B and Ex. F. Plaintiff has provided no evidence that he has resubmitted those claims through the proper channels. Next, Plaintiff states that he filed informal requests to have his legal property returned, but does not state that he has filed any proper formal administrative remedies. See Addendum at Ex. B, C and D. Thus, based on Plaintiff's statements to the Court and the submitted remedies, it is clear from the complaint that Plaintiff has failed to exhaust his administrative remedies with regard to all of the claims raised in the complaint. Plaintiff's argument that exhaustion is either futile or will not afford him the relief he seeks is without merit. See Booth v. Churner, supra. Accordingly, the complaint is due to be dismissed for the failure to exhaust.[4]

---

[4] Administrative remedies must be exhausted prior to filing suit and rejected remedies are not exhausted remedies. Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006). In Woodford, the Supreme court found that because the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal

## B. Retaliation Claims

First, Plaintiff's claims of retaliation have not been exhausted as stated above and could be dismissed on that basis alone. However, 42 U.S.C. 1997e(c)(2) provides "[i]n the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies."

In order to sustain a claim based on retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994). Therefore, "in forma pauperis plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked conclusory allegations of reprisal to survive [§ 1915(e)(2)(B) ]." Id. Furthermore, claims of retaliation are treated with skepticism in the prison context. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.1996). Additionally, "a plaintiff alleging that government officials retaliated against her in violation of her constitutional rights must demonstrate, *inter alia,* that she suffered some adversity in response to her exercise of protected rights. "American Civil Liberties Union of Maryland, Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993).

In this case, Plaintiff asserts that he was retaliated against because he filed administrative remedies against staff for alleged misconduct. However, inmates do not have a constitutional right to participate in grievance procedures. Adams, 40 F. 3d at 75. Thus, Plaintiff can state no retaliation claim regarding the filing of his grievances.

---

case"; and (3) to "reduce the quantity and improve the quality of prisoner suits," the PLRA requires *"full* and *proper* exhaustion" prior to filing suit. Woodford, 126 S.Ct. at 2387 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 2393.

10

C.  **Motion for Injunctive Relief**

The standard for granting injunctive relief in this Court is the balancing-of-hardship analysis set forth in Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977). In making this analysis, the Court must consider the following four factors:

(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,

(2) the likelihood of harm to the defendant if the requested relief is granted,

(3) the likelihood that the plaintiff will succeed on the merits, and

(4) the public interest.

Direx Israel, Ltd v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). The "[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction." Id. (citation omitted).

A court will not grant a preliminary injunction unless the plaintiff first makes a "clear showing" that he will suffer irreparable injury without it. Id. The required harm "must be neither remote nor speculative, but actual and imminent." Id. (citations and internal quotation omitted). If such harm is demonstrated, the court must balance the likelihood of harm to the plaintiff if an injunction is not granted and the likelihood of harm to the defendant if it is granted. Id. (citation omitted). If the balance of those two factors "'tips decidedly' in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991) (citations omitted). However, "[a]s the balance tips away from the plaintiff, a stronger showing on the merits is required." Id. (citation omitted).

In this case, Plaintiff seeks a preliminary injunction directing the Defendants to stop having negative interaction with him, stop imposing incident reports on him, stop placing sanctions on him, and/or to transfer him to another institution. First, the Court does not have the authority to direct the BOP to transfer Plaintiff to another institution.[5] Next, even assuming that there is a likelihood of irreparable harm to Plaintiff if the injunction does not issue, the undersigned believes that such harm is outweighed by the possible harm to the Defendants. Plaintiff seeks an injunction directing the Defendants to stop having negative interaction with him and to stop imposing incident reports and sanctions on him. However, such a request is too vague and would lead to an injunction effectively preventing the BOP from being able to perform its administrative duties. Moreover, the incident that Plaintiff cites in support of this request is one in which Plaintiff freely admits that he was in the wrong.

Third, the fact that Plaintiff is incarcerated at the institution where the Defendants are employed is not enough to show that he is in actual or imminent danger of being harmed. At best, Plaintiff's request alleges merely a remote or speculative possibility that he could be harmed by the failure to issue an injunction. Finally, as already stated herein, Plaintiff cannot show a likelihood that he will succeed on the merits of this case.

For all of the above reasons, the undersigned recommends that Plaintiff's motion for injunctive relief be denied.

## VI. Recommendation

For the foregoing reasons, the undersigned recommends that Plaintiff's retaliation claims be

---

[5] See Meachum v. Fano, 427 U.S. 215 (1976) (the transfer of a convicted and sentenced inmate is within the sound discretion of the BOP); see also, 18 U.S.C. § 3621(b) (the BOP shall designate the place of an inmate's confinement).

**DISMISSED with prejudice** for the failure to state a claim and that Plaintiff's other claims be **DISMISSED without prejudice** for the failure to exhaust administrative remedies. Furthermore, the undersigned recommends that Plaintiff's Motion and Brief for Temporary Restraining Order and/or for Preliminary Injunction (dckt. 13) be **DENIED**.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, and party may file written objections with the Clerk of Court. The written objections shall identify those portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable W. Craig Broadwater, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

IT IS SO ORDERED.

The Clerk is directed to send copies of this Opinion/Report and Recommendation to the *pro se* plaintiff and counsel of record, as applicable.

DATED: November 8, 2006.

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE